**E. Scott PATTERMAN and Donna Patterman, et al., Plaintiffs,**

v.

**THE TRAVELERS, INC., Primerica Financial Services, Inc., Primerica Life Insurance Co., and National Benefit Life Insurance Co., Defendants.**

No. CIV. A. CV197–067.

United States District Court,
S.D. Georgia,
Augusta Division.

Oct. 7, 1997.

John Chapman Bell, Jr., Bell & James, Augusta, GA, for Plaintiffs.

John J. Almond, Peter W. Schneider, Rogers & Hardin, Atlanta, Thomas William Tucker, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, for Defendants.

## ORDER

ALAIMO, District Judge.

Plaintiffs, E. Scott Patterman and Donna Patterman ("Pattermans"), filed a class action against Defendants, The Travelers, Inc. ("Travelers"), Primerica Financial Services, Inc. ("PFS"), Primerica Life Insurance Company ("Primerica Life"), and National Benefit Life Insurance Company ("NBL"), in the Superior Court of Richmond County, Georgia.[1] Plaintiffs contend that Defendants' actions in selling term life insurance and mutual fund products violated state common law, consumer protection statutes, and the Georgia Racketeer Influenced Organizations Act ("RICO"), O.C.G.A. § 16–14–4 (1996). Pursuant to 28 U.S.C. § 1441, Defendants removed the action to the United States District Court for the Southern District of Georgia. Plaintiffs now move to remand this action to Superior Court pursuant to 28 U.S.C. § 1447(c). Plaintiffs contend that this action arises under Georgia law and, therefore, the Court lacks jurisdiction to resolve the dispute. For the reasons set forth below, Plaintiffs' motion for remand will be **GRANTED.**

## FACTS

In April of 1993, Robert Sgambelluri ("Sgambelluri"), an agent of PFS, sold the Pattermans term life insurance policies. The Pattermans surrendered the whole life policies they owned through Metropolitan Life Insurance Company and purchased the term life policies issued and underwritten by Primerica Life and NBL. Additionally, based on Sgambelluri's advice, the Pattermans invested the remaining proceeds from the surrender of their whole life policies in four accounts in the Common Sense Growth Fund ("the Fund"), a mutual fund created in part by PFS. Approximately a year later, the Pattermans canceled their insurance policies and closed their mutual fund accounts when they realized that the Fund was not performing as Sgambelluri promised and that their investment would not be tax deferred.

Plaintiffs contend that Defendants are administering a pyramid scheme. Specifically, Plaintiffs contend that Defendants recruit individuals without an insurance or securities background to sell term life insurance policies and financial products on a part-time basis. Plaintiffs claim, that under the pyramid scheme, Defendants' agents recruit other individuals to serve as agents and, then, receive a percentage of the commissions generated by each of their recruits. Plaintiffs contend that Defendants' agents are not educated in the areas of insurance or securities, nor do Defendants provide their agents with the needed substantive training. Rather, Plaintiffs claim that Defendants teach their agents false and misleading sales techniques. Plaintiffs contend that the agents then use these techniques to persuade life insurance holders to surrender or borrow against their existing cash value life insurance policies and purchase term life insurance and mutual funds through PFS.

On May 11, 1997, the Pattermans filed a class action in the Superior Court of Richmond County, Georgia, on behalf of all persons and entities, other than Defendants,

---

1. Travelers is a publicly owned financial holding company. PFS is a wholly owned subsidiary of Travelers. PFS markets and sells individual term life insurance and mutual funds. Primerica Life is also a wholly owned subsidiary of Travelers, and NBL is a wholly owned subsidiary of Primerica Life. Primerica Life and NBL issue and underwrite individual term life insurance policies for PFS.

who "surrendered or borrowed against one or more whole life, universal life or other permanent cash value insurance policies issued by a non-defendant insurance company and purchased instead one or more term life insurance policies issued by one of the defendants and/or invested in one or more of the Common Sense family of mutual funds." (Compl.¶ 1). Plaintiffs allege eight causes of action, including fraud and deceit, negligent misrepresentation, negligent supervision, fraudulent inducement, unfair business practices and false and misleading advertising, unjust enrichment, fraudulent concealment, and racketeering.

On April 9, 1997, Defendants removed this action to the United States District Court for the Southern District of Georgia, presumably under the grant of original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(b). Defendants contend that removal was proper on three grounds. First, Defendants claim that the National Securities Market Improvement Act of 1996 ("NSMIA")[2] pre-empts Plaintiffs' mutual fund-related claims and, therefore, provides federal jurisdiction over this action.[3] Second, Defendants contend that under the artful pleading doctrine, the Court has jurisdiction because Plaintiffs included "disguised federal securities law claims" in their complaint. Third, Defendants contend that the Court has jurisdiction because Plaintiffs' Georgia RICO claim is expressly predicated on federal mail and wire fraud statutes. Plaintiffs, however, argue that removal was improper because the complaint is based on state law claims.

*DISCUSSION*

**I. *Removal Jurisdiction***

 A defendant may remove to federal court any civil action "founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b) (1994).[4] The determination of whether the plaintiff's claim arises under fed-

eral law is made by reference to the complaint. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420, 430–431 (1983). A claim does not arise under federal law unless a federal question is presented on the face of the plaintiff's complaint. *Id.* at 11, 103 S.Ct. at 2845, 77 L.Ed.2d at 431; *Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). This is known as the well-pleaded complaint rule. Under this rule, the Court's inquiry is limited to the four corners of the complaint. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318, 327 (1987). Since "the plaintiff [is] the master of the claim[,] he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Removal jurisdiction does not exist simply because the plaintiff could have chosen to bring a federal claim instead of, or in addition to, the state claim. *Id.; Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650, 659 (1986).

 The removing party bears the burden of establishing that the district court has jurisdiction. *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356 (11th Cir.1996); *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989). The removal statute should be construed narrowly, and when removal jurisdiction is in doubt, uncertainties are resolved in favor of remand. *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

**II. *Federal Pre-emption***

 Ordinarily, federal pre-emption is a federal defense to the plaintiff's suit. Since it is a defense, the federal claim does not appear on the face of the complaint and, therefore, does not create removal jurisdic-

---

**2.** Pub.L. No. 104–290, § 102(a), 110 Stat. 3416, 3417–18 (1996).

**3.** Defendants contend that NSMIA pre-empts Plaintiffs' claim that Defendants used inaccurate sales material related to the Fund. Additionally, Defendants contend that NSMIA preempts Plaintiffs' claims concerning certain substantive aspects of the Fund. Such claims include that the

Fund's sales load was the highest in the industry, and that the Fund overcharged shareholders for expenses related to managing the Fund.

**4.** Although there is complete diversity among the parties, Defendants are citizens of Georgia, the forum state, and, therefore, cannot remove the case on diversity grounds. 28 U.S.C. § 1441(b) (1994).

tion. *Gully*, 299 U.S. at 113, 57 S.Ct. at 98, 81 L.Ed. at 72; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55, 63 (1987). There is, however, an exception to the well-pleaded complaint rule called "complete pre-emption." Under the doctrine of complete pre-emption, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63, 107 S.Ct. 1542, 107 S.Ct. at 1546, 95 L.Ed.2d at 63. This exception converts what ordinarily would be state law claims into federal claims for the purposes of the well-pleaded complaint rule, allowing the defendant to remove the case to federal court. *Id.*; *Kemp v. International Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir.1997).

In 1996, Congress enacted NSMIA to promote both the formation of capital in financial markets and the more efficient management of mutual funds.[5] Pub.L. No. 104–290, 110 Stat. 3416. To achieve this purpose, Section 102(a) of NSMIA[6] precludes states from imposing disclosure requirements on prospectuses, traditional offering documents, and sales literature relating to covered securities.[7] § 102(a), 110 Stat. at 3417–18. Defendants contend that NSMIA completely pre-empts state regulation of mutual fund disclosure documents. (Defs.' Opp'n Pls.' Mot. Remand at 6). Defendants allege that because Plaintiffs' complaint concerns such materials, NSMIA provides federal jurisdiction over the complaint. (*Id.*)

 Few statutes, however, possess the "extraordinary pre-emptive power" required to characterize an entire area of the law and all claims arising thereunder as federal.

*Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. at 1547, 95 L.Ed.2d at 64. Instead, the complete pre-emption doctrine applies only where Congress has "clearly manifested an intent" to make a particular cause of action removable to federal court. *Id.* at 66, 107 S.Ct. at 1548, 95 L.Ed.2d at 65. Even an obvious pre-emption defense is not sufficient to create removal jurisdiction. *Id.* Rather, the pre-emptive force of a federal statute must be "so powerful as to displace entirely any state cause of action." *Franchise Tax Bd.*, 463 U.S. at 23, 103 S.Ct. at 2853, 77 L.Ed.2d at 439.

The Supreme Court has found only two statutes to possess the "extraordinary pre-emptive power" necessary to create federal removal jurisdiction, Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 (1978), and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 (1985). *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Metropolitan Life*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55. In *Avco Corp.*, the Court held that Section 301 of the LMRA displaced entirely any state cause of action for violation of contracts between an employer and a labor organization. 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126. Then, twenty years later, in *Metropolitan Life*, the Court extended the complete pre-emption principle to ERISA. 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55. The Court concluded that Section 502 of ERISA possessed "that extraordinary pre-emptive power" because "the language of the jurisdiction subsection of ERISA's civil enforcement pro-

---

**5.** NSMIA amends portions of the Federal Securities Acts, specifically, the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77a *et seq.* (1997), and the Securities Exchange Act of 1934 ("Securities Exchange Act"), 15 U.S.C. § 78a *et seq.* (1997) (collectively referred to as the "Federal Securities Acts"). NSMIA also amends portions of the Investment Company Act of 1940 ("Investment Company Act"), 15 U.S.C. § 80a–1 *et seq.* (1997).

**6.** Section 102(a) provides:

"Except as otherwise provided in this section, no law, rule, regulation, or order, or other administrative action of any State or any political subdivision thereof-

(2) shall directly or indirectly prohibit, limit, or impose any conditions upon the use of-
(A) with respect to a covered security described in subsection (b), any offering document that is prepared by or on behalf of the issuer; or
(B) any proxy statement, report to shareholders, or other disclosure document relating to a covered security or the issuer thereof ...."
Pub.L. No. 104–290, § 102, 110 Stat. 3416, 3417–18 (1996).

**7.** For the purposes of NSMIA, the Common Sense Mutual Fund is a covered security. § 102, 110 Stat. 3416, 3417–18.

visions closely parallel[ed] that of § 301 of the LMRA." *Id.* at 65, 107 S.Ct. at 1547, 95 L.Ed.2d at 64. The Court has declined to extend the complete pre-emption doctrine beyond the LMRA and ERISA. *See, e.g., Pan American Petroleum Corp. v. Superior Court of Del.,* 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961) (holding that the Natural Gas Act did not completely pre-empt state law claims within its scope and, thus, the federal court did not have removal jurisdiction over the contract price dispute filed in state court).

■ The complete pre-emption doctrine does not apply to NSMIA. Neither the text of the statute nor its legislative history manifest Congress' intent to completely pre-empt state law claims within NSMIA's scope. *See Metropolitan Life,* 481 U.S. at 65, 107 S.Ct. at 1547, 95 L.Ed.2d at 64. Rather, NSMIA does not contain a civil enforcement provision, an absence the Court finds to be significant. Pub.L. No. 104–290, 110 Stat. 3416. NSMIA, because it does not contain a civil enforcement provision, does not displace entirely state mutual fund-related claims.[8]

NSMIA lacks the complete pre-emptive force necessary to recharacterize Plaintiffs' complaint as federal and to justify removal to federal court. Rather, "[t]he prudent course for a federal court that does not find a clear Congressional intent to create removal jurisdiction [is] to remand the case to state court." *Metropolitan Life,* 481 U.S. at 68, 107 S.Ct. at 1548, 95 L.Ed.2d at 65 (Brennan, J., concurring). Defendants have failed to meet their burden of establishing that the district court has jurisdiction. While NSMIA may provide Defendants with a valid pre-emption defense to Plaintiffs' mutual fund-related claims, it is a defense for the Georgia courts to consider.

### III. *Artful Pleading*

■ Alternatively, Defendants contend that the artful pleading doctrine provides an independent basis for removal. (Defs.' Mem. Opp'n Pls.' Mot. Remand at 15). Under this doctrine, "occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of the plaintiff's characterization." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103, 108 (1981). Defendants contend that Plaintiffs include in their complaint "disguised federal securities law claims" and, that, the presence of these claims permits removal. (Defs.' Mem. Opp'n Pls.' Mot. Remand at 13).

■ The artful pleading doctrine applies in two categories of cases. First, the doctrine applies where the plaintiff files a state law action to avoid the preclusive effect of a prior federal judgment. *Federated Dep't Stores,* 452 U.S. at 397 n. 2, 101 S.Ct. at 2427, 69 L.Ed.2d at 108; *Four Way Plant Farm, Inc. v. NCCI,* 894 F.Supp. 1538, 1542 (M.D.Ala.1995); *King Provision Corp. v. Burger King Corp.,* 750 F.Supp. 501, 504 (M.D.Fla.1990). In cases where the plaintiff loses an action in federal court, and then files the identical or substantially similar action in state court, the removal court will look beyond the four corners of the complaint to determine the true nature of the claims. *Federated Dep't Stores,* 452 U.S. at 397 n. 2, 101 S.Ct. at 2427, 69 L.Ed.2d at 108; *Four Way Plant Farm,* 894 F.Supp. at 1542; *King Provision,* 750 F.Supp. at 504. The instant case clearly does not fall into this category since Plaintiffs have not brought their claims previously in federal court.

The second category of cases where the artful pleading doctrine applies, is when the

---

8. While NSMIA does not contain civil enforcement provisions, the Acts which NSMIA amends do contain such provisions. Specifically, the Federal Securities Acts and the Investment Company Act contain civil enforcement provisions. However, neither the Federal Securities Acts nor the Investment Company Act contains jurisdictional language similar to that contained in the LMRA and ERISA. The Court finds this difference to be significant. In *Metropolitan Life,* the Court held that Section 502 completely pre-empted state law claims within its scope because the jurisdictional language in its civil enforce-

ment provisions mirrored that in Section 301 of the LMRA. *Metropolitan Life,* 481 U.S. at 65, 107 S.Ct. at 1547, 95 L.Ed.2d at 64. The Court's reasoning cannot be extended to either the Federal Securities Acts or the Investment Company Act. Rather, the Federal Securities Act and the Investment Company Act provide for *concurrent* state and federal jurisdiction. 15 U.S.C. § 77v; 15 U.S.C. § 78bb(a); 15 U.S.C. § 80a–43. Thus, the civil enforcement provisions in the Federal Securities Acts and in the Investment Company Act do not displace entirely state mutual fund-related claims.

plaintiff's state law claim is completely preempted by federal law. *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1546, 95 L.Ed.2d at 63; *Four Way Plant Farm,* 894 F.Supp. at 1542; *King Provision,* 750 F.Supp. at 504. Again, the instant case does not fit within this category, since NSMIA does not completely pre-empt Plaintiffs' claims so as to create federal removal jurisdiction. *See* discussion Part II, *supra.*

Defendants, however, contend that complete pre-emption is not necessary for the artful pleading doctrine to apply. (Defs.' Mem. Opp'n Pls.' Mot. Remand at 15). Instead, Defendants claim that complete pre-emption is distinct from the artful pleading doctrine and provides an independent basis for removal. *Id.* The Court declines to adopt Defendants' interpretation of the artful pleading doctrine. The doctrine is one of limited application, providing the removal court with jurisdiction only when the action falls within one of the two aforementioned categories. *Four Way Plant Farm,* 894 F.Supp. at 1542; *King Provision,* 750 F.Supp. at 504. Furthermore, the artful pleading doctrine, if expanded beyond those two categories, would nullify the well-settled principle that the plaintiff is master of the complaint. *United Jersey Banks v. Parell,* 783 F.2d 360, 368 (3rd. Cir.1986); *Hunter v. United Van Lines,* 746 F.2d 635, 640 (9th Cir.1984), *cert. denied,* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985).

As discussed above, Plaintiffs have not brought a prior federal action which is identical or substantially similar to this instant action, nor is Plaintiffs' complaint completely pre-empted by federal law. Therefore, the doctrine of artful pleading is inapplicable. Since Plaintiffs have limited their theory of recovery to claims under state law, the Court does not have jurisdiction over the claims and must remand the case.

## IV. *Georgia RICO Claim*

 Defendants also contend that the state court lacks jurisdiction because Plaintiffs relied on federal wire and mail fraud statutes for the predicate acts to establish their Georgia RICO claim. (Defs.' Mem. Opp'n Pls.' Mot. Remand at 18). Defendants contend that Plaintiffs "have no cause of action except for the violation of a federal

law." (Defs.' Sur–Reply Mem. Opp'n Pls. Mot. Remand at 9). Plaintiffs, however, contend that their use of federal statutes merely supports their state claims and does not establish federal jurisdiction. (Pls.' Mem. Supp. Mot. Remand at 7).

 A plaintiff may not avoid federal question jurisdiction by "omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. at 2841, 77 L.Ed.2d at 439. Rather, federal jurisdiction may arise if the well-pleaded complaint establishes that the right to relief under state law requires resolution of a substantial question of federal law. *Id.* at 13, 103 S.Ct. at 2848, 77 L.Ed.2d at 433. However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow,* 478 U.S. at 813, 106 S.Ct. at 3234, 92 L.Ed.2d at 661. Nor is the fact that part of the state statutory scheme requires some analysis of federal law sufficient to invoke federal jurisdiction. *Moore v. Chesapeake & Ohio R. Co.,* 291 U.S. 205, 212–215, 54 S.Ct. 402, 405–406, 78 L.Ed. 755, 760–762 (1934); *Hill v. Marston,* 13 F.3d 1548, 1550 (11th Cir.1994). "[T]he fact that federal law may be the source or basis of the plaintiff's state-law claims does not support removal." *Austin v. American Gen. Fin., Inc.,* 900 F.Supp. 396, 399 (M.D.Ala.1995).

In a case similar to the instant action, the Eleventh Circuit held that the district court did not have jurisdiction over the action. *Hill,* 13 F.3d at 1550. In *Hill,* the plaintiff alleged negligence, breach of contract, and state securities violations. The court determined that while the state claims involved some interpretation of related federal securities law, the existence of federal issues was insufficient to create federal jurisdiction. *Id.; see also Meinders v. Refco Sec., Inc.,* 865 F.Supp. 721, 723 (D.Colo.1994)(holding that a state securities claim, which alleged federal mail, wire, and securities violations as the predicate acts, did not "arise under" federal law and, thus, did not create federal jurisdiction).

In this case, the claimed violations of federal mail and wire fraud statutes as elements of Plaintiffs' Georgia RICO action is not sufficiently substantial to confer federal ques-

tion jurisdiction. *See Hill,* 13 F.3d at 1550; *Meinders,* 865 F.Supp. at 723. The complaint alleges no claims "arising under" federal law and, thus, removal was improper. Plaintiffs have chosen to forgo any federal remedy and plead only state law causes of action. Indeed, "when both federal and state law is available, plaintiff's election to proceed exclusively under state law does not give rise to federal jurisdiction." *Avitts v. Amoco,* 53 F.3d 690 (5th Cir.1995); *see also Caterpillar, Inc.,* 482 U.S. at 392, 107 S.Ct. at 2429, 96 L.Ed.2d. at 327.

## *CONCLUSION*

The Court has carefully reviewed the briefs submitted by the parties. For the foregoing reasons, the Court hereby **GRANTS** Plaintiffs' Motion for Remand. Additionally, the Court **DENIES** Defendants' Motion for Oral Argument on the grounds that oral argument would not materially aid in the resolution of this matter.