COUNTY OF DELAWARE, Plaintiff,

v.

GOVERNMENT SYSTEMS,
INC., Defendant.

No. CIV.A. 01–5982.

United States District Court,
E.D. Pennsylvania.

Sept. 27, 2002.

Francis X. Crowley, Blank, Rome, Comisky & McCauley, Media, PA, for Plaintiff.

Gerry J. Elman, Elman and Associates, Media, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I. INTRODUCTION

Plaintiff, the County of Delaware ("County") brought suit against defendant, Government Systems, Inc. ("GSI") in the Court of Common Pleas of Delaware County for claims arising under three written agreements between the County and GSI (the three written agreements are hereinafter referred to as the "Agreements"). Under the Agreements, GSI agreed to provide the County with a program for accounting and issuing payroll checks called Total Accounting for Government–Human Resources System ("TAG–HRS"), as well as other related personnel and payroll services.

A number of problems arose between the parties with regard to GSI's performance under the Agreements. Ultimately, the County filed a complaint in state court alleging numerous state law claims against GSI. In response, GSI removed the case to federal court on the basis of federal question jurisdiction alleging that the County had engaged in artful pleading to avoid federal court jurisdiction and that a number of the state law claims brought by the County are converted to federal claims under the doctrine of complete preemption. Before the court is the County's motion to remand this matter back to state court and for attorneys' fees.

For the reasons stated below, the court concludes that the County's claims do not raise federal questions. Thus, removal was improper, and the case shall be remanded to state court. Regardless, however, the court finds that the County is not entitled to costs and attorneys' fees for GSI's improvident removal of the case.

### II. BACKGROUND

Under the Agreements, GSI agreed to provide the County with the TAG–HRS program, for accounting and issuing payroll checks, as well as other related personnel and payroll services. Pursuant to the Agreements, GSI was to install TAG–HRS by December 1998. The County alleges, however, that TAG–HRS did not become operational until early 2000, and that it never operated up to the standards represented by GSI. As a result, the County was forced to pay additional funds to GSI to remedy the operational problems. According to the County, however, GSI was unable to do so.

The County claims that, given GSI's failure to resolve the operational problems with the TAG–HRS program, it was forced to employ outside consultants. This caused the County to incur significant costs. Ultimately, the County decided to terminate the Agreements with GSI and contract with another vendor of human

resource and payroll software and services.

Before the County took official action to terminate the Agreements, however, GSI accused the County of violating the license agreement by allowing access to the TAG–HRS program by unauthorized individuals.[1] The County maintains that any and all access by outside consultants to the TAG–HRS program was for the sole purpose of enabling the County to make beneficial use of the TAG–HRS system. According to the County, access of the kind the outside consultants were afforded to the TAG–HRS system was permitted by the Agreements. The County further argues that GSI made these accusations in an attempt to thwart any effort by the County to contract with an alternative provider of human resource and payroll software and services. GSI's intent is evidenced, according to the County, by GSI's communication of these accusations to the computer vendor with which the County planned to replace GSI. In addition, the County claims that GSI improperly entered the County's data processing system through a remote link and deleted vital source code from the TAG–HRS system.[2]

On October 30, 2001, the County filed a complaint in the Court of Common Pleas of Delaware County alleging breach of contract (Count I), tortious interference with a contract (Count II), breach of duty of good faith and fair dealing (Count III)[3], conversion (Count IV) and trespass to chattels (Count V).[4] On November 20, 2001, GSI filed its answer and counterclaims. GSI alleged infringement of copyright (Count I), vicarious infringement of copyright (Count II), breach of contract (Count III) and breach of trade secrecy (Count IV).

On November 29, 2001, GSI removed the County's action to this court. In its Notice of Removal, GSI states the following basis for removal:

This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §§ 1331[sic] (federal question), and is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. §§ 1441(b) [sic], in that it is a civil action arising under the laws of the United States, and specifically, said actions incorporate claims whose subject matter is intimately concerned with issues of copyright and which further concerns counterclaims stated in copyright infringement and vicarious infringement of copyright, all of which are governed by the Copyright Act of 1976,

---

1. As mentioned above, GSI and the County entered into a series of written agreements. The first agreement concerned the actual provision of the TAG–HRS program to the County. The second agreement was a license agreement, which generally establishes the rights of the contracting parties to the subject of the contract with respect to intellectual property. The third agreement was a maintenance agreement concerning the maintenance of the TAG–HRS program.

2. According to the County, GSI was contractually obligated to provide the deleted source code to the county.

3. The pleadings of both parties suggest, and the court agrees, that federal court jurisdiction over Count III of the County's complaint could arise only under the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. However, because the court finds that it lacks jurisdiction over all of the County's claims, it is unnecessary to address its jurisdiction over Count III.

4. When served with the complaint, GSI was also served with a Special Injunction obtained *ex parte* by the County as of October 31, 2002. The parties have stipulated to the extension of the duration of the Special Injunction, and the Court of Common Pleas entered an order extending the duration of the injunction until further order of the court.

17 U.S.C. §§ 101 et seq., over which the federal court has exclusive jurisdiction. This Court has supplemental jurisdiction over the other claims alleged in the complaint and counterclaim under 28 U.S.C. §§ 1367[sic].

Subsequently, the County filed a motion to remand the matter back to state court, asserting that "[n]one of the [C]ounty's claims presents a federal question."[5] Incorporated in the County's motion, pursuant to 28 U.S.C. § 1447(c), is a request for costs and expenses, including attorneys' fees, incurred as a result of removal.

### III. DISCUSSION

In support of its core contention that the County's state law complaint implicates a federal question, GSI advances a plethora of arguments. Initially, GSI argues that the case was properly removed to federal court because allegations in the complaint raise issues of copyright infringement. For example, GSI contends that the County's claim that it is entitled damages in the amount of expenses incurred to hire outside consultants raises federal questions under the United States copyright laws of whether the County was authorized to allow the consultants access to the TAG–HRS program, and, in turn, whether GSI has a legal right to prevent such access. Evidence of the presence of a federal question, according to GSI, is found in specific references to the Copyright Act in the exhibits to the complaint.

GSI also alleges that "the [County] has engaged in 'artful pleading' to 'defeat removal by failing to plead necessary federal questions.'" In support, GSI makes three distinct, but related, arguments. First, GSI asserts that the County's breach of contract claim is an implicit request for a

declaratory judgment that its actions do not constitute an infringement of GSI's copyright (which clearly raises a federal question). Second, GSI contends that an assertion of lack of privilege is an element of the County's intentional interference with contract claim. Thus, the question of whether the alleged copyright infringement by the County justified GSI's interference should have appeared in a well-pleaded complaint to establish federal court jurisdiction. Third, GSI argues that the County's conversion claim necessarily challenges GSI's ownership rights with regard to the TAG–HRS program under United States copyright law. Finally, GSI argues that the complete preemption exception to the well-pleaded complaint rule applies to the County's complaint in this case.

After a recitation of the applicable law, the court will examine its jurisdiction over each count of the County's complaint separately *in seriatim.*[6] GSI's contentions in support of removal are addressed where appropriate.

### A. *Applicable Law*

■ The United States Supreme Court has made it clear that "the plaintiff is the master of the complaint ... and that the plaintiff may, by eschewing federal law, choose to have [his] cause heard in state court." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 398–99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). To form the basis of removal, "a federal question must appear on the face of the complaint." *Id.* at 399, 107 S.Ct. 2425. The existence or absence of federal question is determined in the context of the well-pleaded complaint rule

---

**5.** It should be noted here that the parties are not diverse in citizenship. Therefore, the court has jurisdiction only if the case involves a federal question pursuant to 28 U.S.C. § 1331.

**6.** As discussed above, the court will not address Count III of the County's complaint.

and federal question jurisdiction exists only when a federal question is presented within the four corners of plaintiff's properly pleaded complaint. See id. at 392, 107 S.Ct. 2425.

■ For a federal court to assert jurisdiction over a case based on federal question, the Constitution, laws or treaties of the United States must supply an essential element of the plaintiff's cause of action. *See Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *see also* 28 U.S.C. § 1331. Additionally, a case is not removable on the basis of a federal defense, including the defense of preemption. *See Caterpillar, Inc.,* 482 U.S. at 393, 107 S.Ct. 2425. This is so even if the defense is anticipated in the plaintiff's complaint and "both parties concede that the federal defense is the only question at issue." *Id.; see Lazorko v. Pennsylvania Hosp.,* 237 F.3d 242, 248 (3rd Cir.2000). Moreover, the Third Circuit has adopted the majority rule that counterclaims may not be considered in the removal context to establish federal jurisdiction. *See Spectacor Mgmt. Group v. Brown,* 131 F.3d 120, 125 (3d Cir.1997).

■ There are, however, two exceptions to the well-pleaded complaint rule discussed above, the "artful pleading doctrine" and the doctrine of "complete preemption." The artful pleading doctrine permits a court to look beyond the plaintiff's allegations to the substance of the plaintiff's complaint. This approach prevents a plaintiff from "defeat[ing] removal by failing to plead necessary federal questions." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 22, 103

S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Meier v. Hamilton Standard Elec. Sys., Inc.,* 748 F.Supp. 296, 299 (E.D.Pa.1990).

■ The doctrine of complete preemption concerns "matters that Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character." *Lazorko,* 237 F.3d at 248. Complete preemption creates removal jurisdiction even though no federal question appears on the face of plaintiff's complaint.[7] *See id.* The Supreme Court has concluded that the preemptive force of some statutes is so extraordinary that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar, Inc.,* 482 U.S. at 393, 107 S.Ct. 2425 (citing *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). The Court further explained that "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* To date, the United States Supreme Court has addressed, and applied, the complete preemption doctrine in the context of only the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141 et seq., and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. *See Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (applying the complete preemption doctrine in the context of the LMRA); *Franchise Tax Bd.,* 463 U.S. at 23–24, 103 S.Ct. 2841

---

7. As noted by the Third Circuit in *Lazorko,* complete preemption contrasts substantive preemption, "which displaces state law but does not, as a defense, confer federal question jurisdiction." *Lazorko,* 237 F.3d at 248.

Stated simply, complete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court.

*BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.,* 182 F.3d 851, 854–55 (11th Cir.1999).

(applying the complete preemption doctrine in the context of ERISA).

Even when a statute completely preempts an area of state law, however, no preemption occurs if the state law claim requires proof of an extra element in addition to, or instead of, those elements that make up the preemptive federal claim. *See Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229–30 (4th Cir.1993); *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir.1993); *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir.1992); *Steven B. Golden Assocs., Inc. v. Blitz Art Prod., Inc.*, 1998 WL 288330 at *2 (E.D.Pa. 1998); *Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Serv., Inc.*, 995 F.Supp. 468, 479–80 (D.N.J.1998). Specifically, "[a] state cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law."[8] *Kregos*, 3 F.3d at 666. If, however, a state cause of action requires an "extra element," in addition to or instead of an act of reproduction, performance, distribution or display that would be prohibited under the Copyright Act, there is no preemption of the state cause of action, provided that "extra element" changes the nature of the action so that it is qualitatively different from a copyright infringement claim. *See Rosciszewski*, 1 F.3d at 229–30; *Gates Rubber Co.*, 9 F.3d at 847; *Kregos*, 3 F.3d at 666; *Computer Assocs. Int'l*, 982 F.2d at 716.

### B. The County's Claim for Breach of Contract Provides No *Basis for Federal Court Jurisdiction.*

In Count I of the complaint, the County alleges that GSI breached the Agreements with the County by: 1) failing to provide a software system in conformance with the Agreements; 2) threatening to terminate the license agreement; 3) removing source code to the TAG–HRS program from the County, which under the Agreements, GSI is required to provide; and 4) accessing the County's computer system for purposes not permitted under the Agreements. The County seeks among its items of damages to be recompensed for hiring outside consultants who attempted to remedy GSI's deficiencies.

The County's assertions sound in state contract law. Via this claim, the County is attempting to enforce its rights, and in turn, hold GSI to its obligations, under the Agreements.

GSI counters that by seeking damages for hiring outside consultants to remedy GSI's alleged deficiencies who were given access to GSI's intellectual property, the County is implicitly seeking a declaratory judgment that it was authorized or licensed to allow the outside consultants access to GSI's intellectual property. If this is so, according to GSI, authorization is an essential element of the county's claim for damages for hiring outside consultants, which raises issues under the federal copyright laws and which needed to be pleaded in the complaint. Had it been properly pleaded, GSI contends, the federal question would have been apparent from the face of the complaint.

---

**8.** As the Fourth Circuit points out in *Rosciszewski:*

Section 106 of the Copyright Act "affords a copyright owner the exclusive right to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the work publicly; and (5) display the work publicly."

*Rosciszewski*, 1 F.3d at 229–30 (citing *Computer Assocs. Int'l*, 982 F.2d at 716.

The court disagrees. The County's claim of authorization or license for hiring outside consultants is predicated upon the Ageements and made pursuant to state law. Viewed in this light, the County has stated a prima facie case of breach of contract under state law. To the extent that GSI is correct that federal copyright law preempts state law in this case and that under federal copyright law, the County was not authorized to afford the outside consultants access to GSI's intellectual property, this argument is not an attack on the County's prima facie case, but rather it states a defense. Therefore, the court finds that the issues raised by GSI concerning federal copyright law are preemption defenses that do not provide a basis for federal jurisdiction. *See Caterpillar, Inc.*, 482 U.S. at 393.

GSI also argues that the court should follow the Fourth Circuit in extending the doctrine of complete preemption to the Copyright Act. *See Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232 (4th Cir. 1993). As the court previously noted, thus far, the United States Supreme Court has extended the doctrine of complete preemption only to cases involving claims arising under the LMRA and ERISA. *See Avco Corp.*, 390 U.S. at 560, 88 S.Ct. 1235; *Franchise Tax Bd.*, 463 U.S. at 23–24, 103 S.Ct. 2841. In *Rosciszewski*, however, the Fourth Circuit held that section 301(a) of the Copyright Act may also serve to completely preempt state law claims. *See Rosciszewski*, 1 F.3d at 232; *see also* 17 U.S.C. § 301(a).

■ Assuming, without deciding, that the Fourth Circuit was correct in including the Copyright Act within the lineage of statutes with the power to completely preempt an area of state law, GSI's arguments fail nonetheless.[9] The County's breach of contract claim cannot be converted, by the Copyright Act, to a federal claim under the doctrine of complete preemption because this claim satisfies the extra element test. Simply stated, the rights and obligations created by the express terms of the Agreements provide the extra element which changes the nature of the action so that it is qualitatively different from a federal copyright infringement claim. *See Rosciszewski*, 1 F.3d at 229–30; *Gates Rubber Co.*, 9 F.3d at 847; *Kregos*, 3 F.3d at 666; *Computer Assocs. Int'l*, 982 F.2d at 716.

The County's complaint does not claim any protections afforded under the federal copyright laws. Specifically, the County does not allege that GSI unlawfully reproduced, displayed or distributed the TAG–HRS program. Rather, the County is alleging that GSI has failed to provide an operational TAG–HRS program as required under the Agreements. Thus, the County is attempting, under the express terms of the Agreements, to assert its right to an operational TAG–HRS system, and to enforce GSI's obligation to provide them with such program, as opposed to enforcing any right granted to it under the federal copyright laws.[10] Because, the County's breach of contract claim is qualitatively different from any claim arising under federal copyright law, the doctrine of complete preemption does not federalize this claim.[11] *See Rosciszewski*, 1 F.3d at

---

9. In light of the court's conclusion that the County's claims satisfy the extra element test, the court need not address whether the Fourth Circuit's extension of the doctrine of complete preemption to cases involving the Copyright Act was proper.

10. In fact, it seems that no claim under the Copyright Act is available to the County under these facts.

11. The vast majority of courts that have addressed complete preemption with regard to contract claims are consistent with the result in this case. *See National Car Rental Sys., Inc. v. Computer Assocs. Intern., Inc.*, 991 F.2d 426 (8th Cir.1993) (breach of contract action was not preempted by Copyright Act); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923 (4th Cir.1988) (breach of contract action was

229–30; *Gates Rubber Co.,* 9 F.3d at 847; *Kregos,* 3 F.3d at 666; *Computer Assocs. Int'l,* 982 F.2d at 716.

### C. The County's Claim for Tortious Interference with a *Contract Provides No Basis for Federal Court Jurisdiction.*

▮ In Count II of the complaint, the County alleges that GSI tortiously interfered with the County's contract with another vendor of human resource and payroll software and services. GSI did so, according to the County, when it accused the County·of violating the license agreement and communicated these accusations to the computer vendor with which the County planned to replace GSI.

▮ Under Pennsylvania law, the elements of a claim for tortious interference with existing or prospective contractual relations are:

(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party, (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring, (3) the absence of privilege or justification on the part of the defendant, and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Strickland v. University of Scranton,* 700 A.2d 979, 985 (Pa.Super.1997) (citations omitted). GSI argues that the third element, the absence of privilege or justification on the part of the defendant, is an issue of federal law because in determining whether its actions were justified, issues of federal copyright law must be decided. Under this view, the complaint would raise a federal question if it were properly pleaded.

Pennsylvania courts have not definitively addressed the issue of who bears the burden of proof with regard to the issue of justification. As noted in the Second Restatement of Torts, "there is little consensus on who has the burden of raising the issue of whether the interference was improper or not and subsequently of proving that issue; and it can not be predicted with accuracy what rule will ultimately develop." Restatement (Second) of Torts § 767 cmt. K. The Restatement advises that:

the question of whether the actor was competing with the other for the prospective business of a third person might be treated as a matter of *culpability,* for which the burden of pleading and proving would be on the *plaintiff,* while the question of whether there was a special relation existing between the actor and the third party making it appropriate for the actor to advise freely with the third party might be treated as a matter of *justification* for which the burden would be on the *defendant.*

*Id.* (emphasis added).

The reasoning of the Restatement sounds in logic. It would seem counterintuitive to require the party asserting intentional interference to bear the burden of proof with regard to lack of privilege or justification. Logically, it is in the interest of the party opposing the claim of intentional interference to raise these issues. Moreover, that party is in the better position to bear this burden. This view is consistent with what little Pennsylvania case-law has addressed this issue. *See,*

---

not preempted by Copyright Act); *Chesler/Permutter Prods., Inc. v. Fireworks Entertainment Inc.,* 177 F.Supp.2d 1050 (C.D.Cal.2001) (breach of contract action was not preempted by Copyright Act). In fact, the only cases the

court has encountered in which a breach of contract claim was completely preempted by the Copyright Act involve contracts implied in law. *See, e.g., Wrench, LLC v. Taco Bell Corp.,* 256 F.3d 446 (6th Cir.2001).

*e.g., Ebasco Servs. v. Pa. Power & Light Co.,* 460 F.Supp. 163, 205 (E.D.Pa.1978) (concluding that defendant in an action for tortious interference "established by a preponderance of the evidence that it acted with reasonable justification and privilege").

Under the facts of this case, the court finds that it is GSI's burden to show justification or privilege in communicating its allegations against the County to the County's prospective payroll program vendor. Since the burden of proof on the issue of justification is on GSI, the court concludes that the County's claim for tortious interference with a contract raises no federal question.[12]

D. The County's Conversion and Trespass to Chattels Claims *Provide No Basis for Federal Court Jurisdiction.*

▮ In Counts III and V of the complaint, the County alleges that GSI is liable to the County for the torts of conversion and trespass to chattels. These claims are based upon the removal by GSI of vital source code from the County's TAG–HRS system. In essence, the County claims that, under the Agreements, it had a property right to vital source code that GSI deleted from the TAG–HRS system, and that GSI infringed upon that right. The County couches this claim as

one of common law conversion and trespass to chattels.[13] GSI contends that since these claims necessarily allege that GSI had no legal right to exclusive possession of the removed source code and that the County had a legal right to prevent its removal by GSI, the claims raise questions under the federal copyright law.

The court's analysis regarding removal jurisdiction over the County's breach of contract claim is equally applicable here. The County has not avoided any federal question via artful pleading in an effort to defeat federal jurisdiction. Once again, the federal questions allegedly present in these claims were raised by GSI in its answer, and are in the nature of preemption defenses, which are substantive defenses to the County's state law claims, and which do not give rise to federal jurisdiction. *See Caterpillar, Inc.,* 482 U.S. at 393, 107 S.Ct. 2425.

▮ Furthermore, the County's claims for conversion and trespass to chattels are not converted into federal claims under the doctrine of complete preemption, because they too satisfy the "extra element" test.[14] Although the court has found a number of cases from other courts holding conversion claims to be completely preempted by the Copyright Act, in each of these cases, the party bringing the conversion claim is the alleged owner of the intellectual property

12. The court also finds that the doctrine of complete preemption does not convert Count II of the County's complaint into a federal claim, as it clearly satisfies the "extra element" test.

13. Although the facts suggest an action in contract, and these common law torts generally require that the thing in question be a chattel, or "the kind of intangible rights which are customarily merged in, or identified with some document," *Regent National Bank v. K–C Ins. Premium Finance Co., Inc.,* 1997 WL 710945 (E.D.Pa. Nov.13, 1997) (quoting *Northcraft v. Edward C. Michener*

*Associates,* 319 Pa.Super. 432, 466 A.2d 620 (1983) (good will and reputation not basis for conversion claim)), the merits of plaintiff's claims are not presently at issue.

14. Once again, the court need not address whether the Fourth Circuit's extension of the doctrine of complete preemption to cases involving the Copyright Act was proper. Assuming arguendo that the Fourth Circuit's decision is correct, nonetheless there is no federal jurisdiction over the County's conversion and trespass to chattels claims because both claims also satisfy the "extra element" test.

at issue, and thus, is trying to enforce state law rights identical to those provided under the Copyright Act. *See, e.g., Murray Hill Publications v. ABC Communications, Inc.*, 264 F.3d 622 (6th Cir.2001) (state law conversion claim involved state law rights equivalent to those granted by the Copyright Act, and thus, was completely preempted); *Berge v. Bd. Of Trs. of the Univ. of Ala.*, 104 F.3d 1453 (4th Cir. 1997) (same); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488 (5th Cir.1990) (same).

In this case, by contrast, the County's claims for conversion and trespass to chattels are not qualitatively similar to any claim that could be brought under the Copyright act.[15] Here, the County is not attempting to enforce state rights that are equivalent to rights provided under federal copyright law. Rather, it is attempting to enforce property rights which allegedly arise from the Agreements. Therefore, the Agreements provide the extra element which precludes the application of the complete preemption doctrine in this case.

### E. *The County is Not Entitled to Attorneys' Fees.*

 Pursuant to 28 U.S.C. § 1447(c), the County seeks attorneys' fees and costs incurred in contesting removal. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of removal." 28 U.S.C. § 1447(c). A district court has broad discretion in determining whether to require the payment of costs and fees under section 1447(c), and may do so even though the party removing the case did not act in bad faith. *See Mints v. Educational Testing Service*, 99 F.3d 1253,

1260 (3d Cir.1996) (in accordance with the law of other circuits).

 In the case at bar, GSI's arguments in support of removal, particularly those regarding the County's claim for tortious interference with a contract, are by no means frivolous or without foundation. *See Lyall v. AirTran Airlines, Inc.*, 109 F.Supp.2d 365, 374 (E.D.Pa.2000). Moreover, GSI's basis for removal, although rejected, was colorable. *See Horowitz v. Marlton Oncology, P.C.*, 116 F.Supp.2d 551, 556 (D.N.J.1999). Therefore, despite the court's decision to remand to the state court, attorneys' fees do not seem appropriate in this case. Accordingly, the court holds that the County is not entitled to attorneys' fees.

### IV. CONCLUSION

Based on the foregoing analysis, the court concludes that it lacks jurisdiction over the County's claims. Accordingly, the County's Motion to Remand to State Court (doc. no. 4) will be granted. Attorneys fees will be denied.

An appropriate order follows.

### *JUDGMENT*

**AND NOW**, on this 27th day of September, 2002, after a hearing with counsel for the parties, it is hereby **ORDERED** that Plaintiff's Motion for Remand to State Court (doc. No. 4) is **GRANTED** and the case shall be **REMANDED** to state court. The Clerk shall deliver the case file and a certified copy of the docket to the Prothonotary of the Court of Common Pleas of Delaware County, Pennsylvania. Plaintiff's request for attorneys' fees and costs

---

**15.** As previously stated, it seems that no claim under the Copyright act is available to the County on the facts of this case.

pursuant to 28 U.S.C. § 1447(c) is **DE-NIED.**

**AND IT IS SO ORDERED.**